IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROMANUS MILES** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **DAVID DIGUGLIELMO,** | : | |
| **SUPERINTENDENT;** | : | **NO. 04-2301** |
| **THE DISTRICT ATTORNEY OF** | : | |
| **THE COUNTY OF LYNNE ABRAHAM;** | : | |
| **and, THE ATTORNEY GENERAL OF** | : | |
| **THE STATE OF JERRY PAPPERT** | : | |

**DUBOIS, J.**                                                                                   **SEPTEMBER 1, 2005**

<u>**MEMORANDUM**</u>

**I.    <u>INTRODUCTION</u>**

Petitioner, Romanus Miles ("petitioner"), is a prisoner at the State Correctional Institution at Graterford.  On May 26, 2004, petitioner filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2254 in this Court.  The Petition was referred to Magistrate Judge Peter B. Scuderi for a Report and Recommendation.  In the Report and Recommendation dated February 15, 2005, the Magistrate Judge recommended that the Petition be denied.  Petitioner filed six Objections to the Report and Recommendation.  For the reasons set forth below, the Court overrules petitioner's Objections, approves and adopts the Report and Recommendation, and denies the Petition for Writ of Habeas Corpus.

**II.   <u>FACTS</u>**

The facts and procedural history of this case are detailed in the Report and Recommendation and need not be repeated in full in this Memorandum.  <u>See</u> <u>Miles v.</u>

Diguglielmo, 2005 WL 396603 (E.D. Pa. Feb. 17, 2005). Instead, the Court will focus on the facts relevant to the issues raised by petitioner's Objections.

On July 12, 1993, following a jury trial in the Court of Common Pleas of Philadelphia County, petitioner was found guilty of five counts of robbery, seven counts of aggravated assault, four counts of conspiracy and six counts of carrying a firearm on public streets. On December 14, 1993, he was sentenced to an aggregate term of 25 to 50 years of imprisonment.

Following direct appeal of his conviction and an unsuccessful request for state postconviction relief, petitioner filed a Petition for Writ of Habeas Corpus in this Court, pursuant to 28 U.S.C. §2254, alleging six grounds for relief: (1) deprivation of due process as a result of the trial court's joinder of multiple offenses in one trial and ineffective assistance of trial counsel for failing to object; (2) ineffective assistance of trial counsel for failing to request a mistrial or curative instructions after the trial judge sustained an objection to a comment by the prosecutor about the Commonwealth's fingerprint expert during summation; (3) ineffective assistance of trial counsel for failing to challenge the jury's use of a chart which the Commonwealth filled in during the course of the trial to track the multiple offenses and related evidence; (4) insufficient evidence to sustain petitioner's conviction of aggravated assault of Philip Brody on conspiracy grounds; (5) trial court error for failing to suppress out-of-court and in-court identification; and (6) ineffective assistance of all prior trial and appellate counsel for failing to present the above-mentioned claims at trial or on appeal[1] and for failing to seek reconsideration of petitioner's

---

[1] The Court notes that petitioner's claims for ineffective assistance of trial counsel in grounds one, two and three also allege claims for ineffective assistance of appellate counsel. However, because petitioner reasserts these claims in ground six of the Petition, the Court addresses all such claims in ground six, as did the Magistrate Judge in the Report and Recommendation.

sentence.

In the Report and Recommendation, the Magistrate Judge denied the Petition on all grounds. Petitioner filed six Objections to the Report and Recommendation on February 28, 2005, in which he objects to the Magistrate Judge's recommendation by reasserting each of the grounds raised in the Petition and pointing out the claimed errors of the Magistrate Judge. The Court addresses petitioner's Objections in turn.

### III. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §2254, provides in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim– (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

"To hold a state court decision is 'contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States,' a federal court must find the state court arrived 'at a conclusion opposite to that reached by [the Supreme] Court on a question of law,' or that the state court confronted facts 'materially indistinguishable from a relevant Supreme Court precedent' but arrived 'at a result different from' that reached by the Supreme Court.'" Moore v. Morton, 255 F.3d 95, 104 (2001) (quoting Williams v. Taylor, 529 U.S. 362 (2000)).

A state court's decision is an unreasonable application of federal law if "(1) the state court identified 'the correct governing legal rule from [the Supreme] Court's cases but unreasonably applie[d] it to the facts' of the particular case, or (2) the state court unreasonably extended or failed to extend a legal principle from the Supreme Court's precedent... '[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable.'" Id.

"'[C]learly established Federal law, as determined by the Supreme Court of the United States' refers to Supreme Court 'holdings, as opposed to the dicta,' as of the time of the relevant state court decision." Id.

## IV.    DISCUSSION

### A.    Petitioner's Claims of Ineffective Assistance of Trial Counsel/Objections

Under the United States Supreme Court decision in Strickland, a petitioner must establish the following in order to succeed on a claim of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  "Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689.  Accordingly, the Third Circuit and other Courts of Appeals have held that "[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." U.S. v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999).  See also, e.g., Rodriguez v. U.S., 17 F.3d 225, 226 (8th Cir. 1994).  Moreover, "a

court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice. . . that course should be followed." Strickland, 466 U.S. at 687.

The standard announced in Strickland constitutes "clearly established federal law" for the purposes of 28 U.S.C. §2254. See Williams v. Taylor, 529 U.S. 362, 391 (2000). Thus, the Court must determine whether the Pennsylvania courts' decision on collateral review to deny petitioner's claims for ineffective assistance of counsel was contrary to, or involved an unreasonable application of, the standard set forth in Strickland.

### 1. *Failure to Object to the Joinder of Multiple Cases*

In the first ground of his Petition, petitioner claims that, *inter alia*, trial counsel was ineffective for failing to object to the trial court's decision to join numerous charges in one trial.[2] On collateral review, the Pennsylvania Superior Court concluded that the trial court did not err in consolidating the offenses at issue. In the Report and Recommendation, the Magistrate Judge agreed with the Superior Court and concluded that consolidation of the charges was permissible under state law and, therefore, that petitioner's counsel was not ineffective for failing to object. Miles, 2005 WL 396603 at *7.

---

[2] The Court notes that in ground one of the Petition and supporting Memorandum of Law petitioner alleges claims of both ineffective assistance of counsel and deprivation of due process under the U.S. Constitution. However, petitioner failed to present the due process claim to the state courts on direct appeal or collateral review. Thus the Magistrate Judge concluded that he need only review the merits of the "properly exhausted" claim of ineffective assistance of counsel. Miles, 2005 WL 396603 at *4 n3. The Court agrees with the Magistrate Judge and adds that petitioner is procedurally defaulted from asserting a due process claim in this Court because he failed to raise it in state court. See 28 U.S.C. §2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).

As noted by the Magistrate Judge and the Superior Court, the Pennsylvania Supreme Court applies a three-part test to determine whether a court should order separate trials for multiple offenses under Pennsylvania Rules of Civil Procedure 582 and 583 in which in it inquires: "[1] whether the evidence of each of the offenses would be admissible in a separate trial for the other; [2] whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative; [3] whether the defendant will be unduly prejudiced by the consolidation of offenses." Commonwealth v. Boyle, 733 A.2d 633 (1999) (citing Commonwealth v. Collins, 550 Pa. 46, 55 (1997)).  The Magistrate Judge concluded that, under this test, joinder was permissible because: (1) the separate charges were sufficiently similar that evidence of each of the offenses would be admissible in a separate trial for the other; (2) that there was no likelihood that the jury was confused by similarities in the robberies and that judicial economy was best served by consolidation; and (3) that defendant was not unduly prejudiced by the consolidation of the offenses. Id. at *5-7.

In his Objections to the Report and Recommendation, petitioner responds that the jury evidenced confusion by convicting him of the robbery of Reales Bar despite evidence that only two men committed the offense and that two other individuals, James McNeil and Thomas Lee, pled guilty to the crime months before petitioner's conviction.  In support of his position, petitioner notes that witnesses inside the bar told investigators that they saw only two men during the robbery and that the government stated that two men robbed the bar in establishing a factual basis for Mr. McNeil's guilty plea. (Pet. Mem., Ex. F).  The Court rejects this argument.

Admittedly, there was evidence presented at trial that two men were involved in the Reales Bar robbery.  However, at trial the Commonwealth also presented evidence that three

men, including petitioner, participated in that robbery. James McNeil testified that he, petitioner, and Thomas Lee entered and robbed the bar together. (N.T. 6/30/93, 25-26). Mr. Lee testified that all three men participated in the robbery and that he and petitioner entered the bar while Mr. McNeil waited outside. (N.T. 7/1/93 7-8, 36). Moreover, Gerald Curran, a witness inside of the bar, testified that, although he saw only two men enter the bar during the robbery, petitioner was one of those individuals. (N.T. 6/18/93, 76-77).

In sum, although there was contrary evidence, the Commonwealth presented sufficient evidence for a jury to conclude that three men, including petitioner, committed the Reales Bar robbery and, alternatively, that petitioner entered the bar and participated in the robbery regardless of whether he was joined by one or two other men. Based on this evidence, the Court agrees with the Magistrate Judge that petitioner has failed to establish that the jury verdict as to the Reales Bar robbery evidences jury confusion resulting from the joinder of multiple charges. Thus, the Court concludes that the state courts, in ruling that trial counsel was not ineffective for failing to object to the joinder of charges, did not make a decision that was based on an unreasonable determination of the facts in light of the evidence or one that was contrary to, or that involved an unreasonable application of, clearly established federal law.

### 2. *Failure to Request a Mistrial or Curative Instruction*

In the second ground of his Petition, petitioner argues that his trial counsel was ineffective for failing to request a mistrial or curative instructions after the trial court sustained defense counsel's objection to statements made by the prosecutor about the Commonwealth's fingerprint expert, Mr. Famiglietti, during closing argument. At trial, Mr. Famiglietti testified that the fingerprints from a shell casing recovered from one of the robberies matched that of

petitioner. On this issue, the Commonwealth introduced an exhibit comparing petitioner's fingerprint with the fingerprint found on the shell casing. Defense counsel attacked Mr. Famiglietti's testimony during cross-examination and closing argument. In response, during closing argument, the prosecutor stated:

> In a few of the[] bars, the seven gunshot shells that were left behind were telling marks as to method and identification. This one, he left his little fingerprint, but ignore that, ladies and gentlemen. After all, [Mr. Famiglietti] didn't have big slides to look at. Ignore a man whose got over 20 years of experience looking a fingerprints for defense and the Commonwealth, ignore all that. He is going to lose his pension all over Mr. Miles. (N.T. 7/6/93 117-118).

Defense counsel objected to this statement and the trial court sustained that objection. Id.

Petitioner states in his Petition that the prosecutor expressed his "personal opinion as to the veracity of the Commonwealth's expert witness [which] had a unavoidable effect [of] creating a fixed bias in minds of the jurors." As a result, petitioner claims that the objection, even though sustained, was insufficient and a mistrial or a curative instruction should have been requested. Pet. Mem. at 24-25. This Court rejects that argument.

In the Report and Recommendation the Magistrate Judge concluded:

> [W]hen viewed in proper context, the state court correctly determined that the prosecutor's statement did not violate Miles's due process rights and create 'a fixed bias in the minds of the jurors'. . . As the state court pointed out, the statements at issue were not an improper commentary regarding the prosecutor's personal opinion, but rather an argument made in 'fair response' to defense counsel's attempt to cast doubt upon the integrity of Mr. Famiglietti's work. Within the framework of this discussion, I find that the state court reasonably determined that the prosecutor's statements did not taint the jury's ability to reach a verdict objectively. Although trial counsel's objection was successful, the prosecutor's statements clearly fell within the bounds of proper advocacy. In light thereof, I conclude that trial counsel cannot be deemed ineffective for failing to request a mistrial or curative instruction. . .Accordingly, I find that the state court's determination of this issue was neither contrary to, nor an unreasonable application of, Strickland.

This Court agrees with the conclusion of the Magistrate Judge on this issue.

In <u>U.S. v. Young</u>, the Supreme Court held that both prosecutors and defense counsel "must refrain from interjecting personal beliefs into the presentation of [their] case[s]," including "vouching" for the credibility of witnesses. <u>Young</u>, 470 U.S. 1, 8-9 & 17-19 (1985). In amplifying that principle, the Court stated that:

> Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding. Instead. . . the remarks must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error. In other words, the Court must consider the probable effect the prosecutor's response would have on the jury's ability to judge the evidence fairly. In this context, defense counsel's conduct, as well as the nature of the prosecutor's response, is relevant. . .Indeed most Courts of Appeals, applying these holdings, have refused to reverse convictions where prosecutors have responded reasonably in closing argument to defense counsel's attacks, thus rendering it unlikely that the jury was led astray.

<u>Id.</u> at 11-12.

In <u>Young</u>, defense counsel stated during summation that his client "acted with honor and integrity" and that the prosecutor had unfairly attacked defendant's credibility. During rebuttal argument, the prosecutor stated, *inter alia*, "I don't know what you call that, I call it fraud" and "I don't know whether you call it honor and integrity, I don't call it that." <u>Id.</u> at 5. The <u>Young</u> court stated that the prosecutor improperly expressed his personal opinion, but it "conclude[d] that any potential harm from this remark was mitigated by the jury's understanding that the prosecutor was countering defense counsel's repeated attacks." <u>Id.</u> at 17. Thus, "[v]iewed in context, the prosecutor's statements. . . were not such as to undermine the fundamental fairness of the trial and contribute to a miscarriage of justice." <u>Id.</u> at 19.

Turning to the facts of this case, the Court concludes that the statement made by the

prosecutor, unlike those in Young, did not amount to a personal opinion as to the veracity of the Commonwealth's expert witness.  See Young, 470 U.S. at 8-9, 17.  To the contrary, the fair import of the statement, in context, was that the expert would not lie because that would result in loss of his pension.  Under the circumstances present in this case - the attack on the credibility of the witness - the prosecutor's statement fell within the bounds of proper advocacy.  Further, assuming, *arguendo*, that the prosecutor did improperly express his personal opinion, the Court concludes that "any potential harm from this remark was mitigated by the jury's understanding that the prosecutor was countering defense counsel's repeated attacks." Id. at 17.  The prosecutor's statement falls far short of "undermin[ing] the fundamental fairness of the trial and contribut[ing] to a miscarriage of justice." Id. at 19.

In his Objections to the Report and Recommendation, petitioner argues that Mr. Famiglietti "did not have anything even close to resembling a chart to show the points of comparison [between his fingerprints and those on the shell casing], not even a copy." (Pet. Mem. at 5).  The Court concludes that the existence or absence of a fingerprint chart is irrelevant to the impact on the jury of statements made by the prosecutor during summation or defense counsel's failure to request a mistrial or curative instruction.

Petitioner was fortunate that the trial court sustained his attorney's objection to the statement of the prosecutor concerning Mr. Famiglietti.  Under the circumstances, it was not necessary, or appropriate, for counsel to seek a mistrial or request a curative instruction.  Thus, this Court concludes that the state court adjudication on this issue was not contrary to, and did not involve an unreasonable application of, clearly established federal law.

### 3. *Failure to Challenge the Jury's Use of a Chart Compiled by the Prosecution*

Petitioner asserts, in the third ground of his Petition, that trial counsel was ineffective for failing to object the jury's use of a chart during deliberation provided by the Commonwealth. During the course of the trial, the Commonwealth filled in the chart "to pinpoint the eight (8) bars that were robbed, to identify the eyewitnesses to those robberies, and to clarify which co-conspirators allegedly participated in which robberies." Miles, 2005 WL 396603, at *8. The Magistrate Judge agreed with the Superior Court that the trial court did not err in allowing the jury to use the chart and that, regardless, petitioner did not suffer any prejudice as a result.

Petitioner, in both his Petition and his Objections, takes the position that the exhibit at issue was not a chart but instead constituted "notes or transcripts," which a jury is prohibited from using during deliberations pursuant to Pennsylvania Rule of Civil Procedure 646.[3] He also asserts that he was prejudiced by the jury's use of the exhibit. He requests that the Court "make a ruling whether [the exhibit] was merely a chart or a written transcript, in view of the record." (Pet. Obj. at 7).

This Court concludes that it need not rule on whether the trial court erred in allowing the

---

[3] Rule 646 states that:

> (A) Upon retiring, the jury may take with it such exhibits as the trial judge deems proper, except as provided in paragraph (B).
> (B) During deliberations, the jury shall not be permitted to have:
>  (1) a transcript of any trial testimony;
>  (2) a copy of any written or otherwise recorded confession by the defendant;
>  (3) a copy of the information;
>  (4) written jury instructions.

jury to use the chart because plaintiff has failed to satisfy the second prong of Strickland–that he was prejudiced and deprived of a fair trial as a result of any such error.  Strickland, 466 U.S. at 687.  Regardless of whether the trial court erred in holding that the exhibit at issue was a chart instead of notes or transcripts, the Superior Court concluded that "any prejudice that [petitioner] may have suffered as a result of the trial court permitting the chart into the deliberations room was cured by the trial court's cautionary instructions." (Pa. Super. Ct. Op. 2/11/03, 18).  At the beginning of the trial, the trial court cautioned the jury at length that:

> [The] diagram or chart is there for one purpose and one purpose only. . .as a guide to listing the various locations, dates, times, places, and participants, witnesses, and the like, to assist you in keeping track of all the different people whose names will be mentioned and who will testify in this case.  Because the defense attorneys are not listing anyone on that board, it is simply a Commonwealth's guide, and it is therefore not to be considered as evidence, per se, of anyone's name being on that board, actually having done anything. (N.T. 5/18/93, 102-03).

 The trial court repeated this instruction later in the trial. (N.T. 6/28/93).  In light of these repeated instructions, the Court agrees with the Magistrate Judge that petitioner has failed to establish that his counsel's failure to challenge the use of the chart "deprive[d] the defendant of a fair trial, a trial whose result [was] reliable." Strickland, 466 U.S. at 687.   The state courts did not make a ruling contrary to, or involving an unreasonable application of, clearly established federal law in holding that counsel was not ineffective on that basis.

### B.     Claim of Insufficient Evidence

In the fourth ground of his Petition, petitioner alleges that the evidence was insufficient to convict him of aggravated assault on conspiracy grounds, pursuant to 18 Pa.C.S. §2702(a)(1),[4]

---

[4] 18 Pa.C.S. §2702(a)(1) provides: "A person is guilty of aggravated assault if he. . . attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life."

for the assault of Philip Brady, a disc jockey at one of the bars robbed. In adjudicating this issue on direct review, the Superior Court found that, on August 21, 1992, petitioner, Adolphus Senior and two other individuals participated in the robbery of the Red Rooster Tavern, and that during the robbery Mr. Senior struck Mr. Brody with a baseball bat. In his Petition, petitioner argues that the Commonwealth failed at trial to establish that Mr. Senior attempted to cause serious bodily injury, or that Mr. Senior had the requisite intent. (Pet Mem. at 36). In the Report and Recommendation, the Magistrate Judge agreed with the conclusion of the Pennsylvania Superior Court that the evidence was sufficient to support petitioner's conviction as a co-conspirator in Mr. Senior's assault. This Court agrees with that conclusion.

In his Objections, petitioner argues, for the first time, that the evidence is insufficient to convict him for conspiring in the aggravated assault because Mr. Senior (the actual perpetrator of the attack) was acquitted of aggravated assault in state court. Petitioner's argument ignores the Supreme Court decision in U.S. v. Powell, in which the Court ruled that a defendant's conviction for a compound offense will not be vacated simply because the defendant was acquitted of the underlying predicate offense. Powell, 469 U.S. 57 (1984). The defendant in Powell was convicted of using the telephone to facilitate, *inter alia*, a conspiracy to possess cocaine with intent to distribute, but the jury acquitted defendant of conspiracy to possess cocaine with intent to distribute. Id. at 60. The Court held that it need not vacate the defendant's conviction as a

---

Moreover, "the law in Pennsylvania is settled that each conspirator is criminally responsible for the action of his co-conspirator, provided it is accomplished in furtherance of the common design, even though one does not perform the immediate act complained of." Com. v. Robinson, 351 Pa.Super. 309, 316 (1986) (internal citations omitted).

result of these inconsistent verdicts, and stated that:

> a criminal defendant already is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts. This review should not be confused with the problems caused by inconsistent verdicts. Sufficiency-of-the evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt. Id. at 67.

Moreover, the Court rejected defendant's argument "that an acquittal on a predicate offense necessitates a finding of insufficient evidence on a compound felony count." Id. at 68. The Court responded that this position "misunderstands the nature of the inconsistent verdict problem," because it "assumes that the acquittal on the predicate offense was proper–the one the jury 'really meant.' This, of course, is not necessarily correct; all we know is that the verdicts are inconsistent." Id. See also Cortis v. Kenney, 995 F.2d 838, 841 (8th Cir. 1993) ("A defendant who is found guilty beyond a reasonable doubt of conspiring with another after a fair trial, however, has no constitutional ground to complain that his coconspirator was acquitted of conspiracy."). Thus, the Powell Court ruled that inconsistent verdicts of this sort do not impact the sufficiency of evidence against a defendant. See Powell, 467 U.S. at 68.

Accordingly, the Court concludes that, in light of Powell, petitioner has failed to establish that the evidence against him was insufficient to convict him of committing aggravated assault on conspiracy grounds simply because Mr. Senior was acquitted of the underlying assault. The state court's ruling on this issue on direct review was not contrary to, and did not involve an reasonable application of, clearly established federal law.

### C.   Other Grounds

In addition to the four grounds detailed above, petitioner raises two additional claims for

habeas relief. In his fifth claim, petitioner argues that the trial court erred in failing to suppress "all evidence of identification which resulted from an improper suggestive photo array." (Pet. Mem. at 39). In his sixth claim, petitioner argues that "trial counsel and prior appellate counsel rendered ineffective assistance of counsel as to deny the petitioner of a fundamentally fair and impartial jury, and effective appellate review." (Id. at 46). The Magistrate Judge concluded that both claims should be denied.

In his Objections, petitioner fails to state any specific objections to the those portions of the Report and Recommendation addressing these claims. Instead he merely states that the Report and Recommendation "is unreasonable in view of the facts, and contrary to the law," and that his Memorandum in support of the Petition "sufficiently addresses th[ese] issue[s]." (Pet. Mem. at 11). The Court agrees with the analysis and conclusions of the Magistrate Judge and approves and adopts the Report and Recommendation on both of these additional grounds.

## V.   CONCLUSION

For the foregoing reasons, the Court overrules petitioner's Objections, adopts the Report and Recommendation, and denies the Petition for Writ of Habeas Corpus.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROMANUS MILES** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **DAVID DIGUGLIELMO,** | : | |
| **SUPERINTENDENT;** | : | **NO.  04-2301** |
| **THE DISTRICT ATTORNEY OF** | : | |
| **THE COUNTY OF LYNNE ABRAHAM;** | : | |
| **and, THE ATTORNEY GENERAL OF** | : | |
| **THE STATE OF JERRY PAPPERT** | : | |

**O R D E R**

**AND NOW**, this 1st day of September, 2005, upon consideration of the Petition for Writ of Habeas Corpus filed by the petitioner, Romanus Miles, and after review of the Report and Recommendation of United States Magistrate Judge Peter B. Scuderi dated February 15, 2005 and Petitioner's Objections to the Report and Recommendation of United States Magistrate Judge Peter B. Scuderi dated February 15, 2005, for the reasons set forth in the attached Memorandum, **IT IS ORDERED** as follows:

1. Petitioner's Objections to the Report and Recommendation are **OVERRULED;**

2. The Report and Recommendation of United States Magistrate Judge Peter B. Scuderi dated February 15, 2005 is **APPROVED** and **ADOPTED.**

3. The Petition for Writ of Habeas Corpus filed by petitioner, Romanus Miles, is **DENIED**; and,

4.  A certificate of appealability will not issue on the ground that petitioner has not made a substantial showing of the denial of a constitutional right as required under 28 U.S.C. §2253(c).

**BY THE COURT:**

_____
**JAN E. DUBOIS, J.**